# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAY W. BOSTER, JR., ) | |
| ) | |
| Petitioner, ) | Case No. CV 07-30-E-LMB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY ) | **AND ORDER** |
| ADMINISTRATION, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Currently pending before the Court is Ray W. Boster, Jr.'s Petition for Review seeking review of the final decision of Respondent denying his claim for Title II Social Security disability benefits and Title XVI Supplemental Security Income benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

## ADMINISTRATIVE PROCEEDINGS

Ray W. Boster ("Petitioner" or "Claimant") filed applications for disability insurance benefits under Title II of the Social Security Act and for supplemental security income benefits under Title XVI of the Act with a protective filing date of April 12, 2004. (AR 59, 60-62).

**MEMORANDUM DECISION AND ORDER- 1**

Petitioner alleged disability beginning September 11, 2003 due to degenerative disc disease, ruptured discs, and arthritis. (AR 42, 60). Petitioner's applications were denied initially (AR 42-44) and again after reconsideration (AR 48-52). Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (AR 53).

The ALJ held a hearing on January 13, 2006. (AR 241). Petitioner and vocational expert, Anne Aastum, appeared and testified at the hearing. *Id.* Petitioner testified that he is disabled due to his back problems, a heart condition, and tremors in his hands. (AR 254-55). At the time of the hearing, Petitioner was 52 years old. (AR 257). He has a high school education (AR 261) and past relevant work as a short order cook, van driver-helper, janitor, and hand packager (AR 285-86).

On June 7, 2006, the ALJ issued a decision denying Petitioner's applications because he found Petitioner has the residual functional capacity to perform a limited range of light work. (AR 27). Based on vocational testimony, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform. (AR 29). Therefore, the ALJ concluded that Petitioner was not under a disability as defined in the Social Security Act at any time through the date of the decision. (AR 30).

Petitioner requested the Appeals Council review the ALJ's decision. (AR 14-20). The Appeals Council denied Petitioner's request on December 1, 2006, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 4-6).

Having exhausted his administrative remedies, Petitioner timely filed this instant action. Petitioner argues that the ALJ's decision is in error, because: (1) Petitioner's residual functional capacity, including a limitation of two hours standing, would dictate a sedentary exertional level

**MEMORANDUM DECISION AND ORDER- 2**

of activity, while the ALJ determined Petitioner could perform at the light exertional level; and (2) in determining the jobs Petitioner is able to perform, the ALJ relied upon the Dictionary of Occupational Titles ("DOT"), which does not account for Petitioner's alternate sit-stand limitation. *Brief in Support of Petition for Review*, pp.2-3 (Docket No. 15).

## II.

### STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**MEMORANDUM DECISION AND ORDER- 3**

With respect to questions of fact, the role of the court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.  With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases."  *Id*. at 1095 (citation omitted).

### III.

### DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920 (1997).  The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If the answer is in the affirmative, disability benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity since his alleged onset date.  (AR 26).

**MEMORANDUM DECISION AND ORDER- 4**

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ found that Petitioner has degenerative disc disease of the lumbar spine and an essential tremor. (AR 26). The ALJ also found that Petitioner had stenosis of the right dominant coronary artery; however, there is no evidence that Petitioner is significantly limited by any coronary problems after a successful angioplasty and stent replacement on April 26, 2001. (AR 27).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is in the affirmative, the claimant is disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). In this respect, the ALJ concluded that Petitioner does not have an impairment, singly or in combination, that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (AR 27).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In this respect, the ALJ found that Petitioner has the following residual functional capacity: can lift 15-20 pounds; can stand or walk for no more than two hours a day; can sit for 20-30 minutes at a time; can stand for 10-15 minutes at a time; must alternate sitting and standing at will; limited to occasional fine finger movement; limited to no more than occasional climbing ladders, ropes and scaffolds; no more than occasional balancing, stooping, kneeling, crouching, and crawling; and needs to avoid concentrated exposure to vibration and unprotected heights and hazards. (AR 27). The ALJ further found that this

**MEMORANDUM DECISION AND ORDER- 5**

residual functional capacity rendered Petitioner unable to perform past relevant work as a short order cook, van driver-helper, janitor and hand packager. (AR 29).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). In this respect, the ALJ found that the Petitioner is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (AR 30). Specifically, the vocational expert testified that an individual with Petitioner's residual functional capacity would be able to perform the requirements of representative occupations, such as toll taker and information clerk. *Id.*

**B.      Petitioner's Ability to Perform Alternate Work that Exists in Significant Numbers in the Economy.**

Petitioner argues that the ALJ's decision is flawed, because it does not explain two inherent conflicts with the DOT. *Brief in Support of Petition for Review*, p. 6 (Docket No. 15). The first alleged conflict is the finding that Petitioner can perform a limited range of light work, even though his residual functional capacity includes a limitation on standing for no more than two hours a day. *Id.* at p. 7. The second alleged conflict is a finding that Petitioner retains the ability to perform work in substantial numbers in the economy based on testimony of a vocational expert that is in conflict with the DOT. *Id.* at pp. 6-7.

**MEMORANDUM DECISION AND ORDER- 6**

> 1. **The Alleged Conflict Between Petitioner's Undisputed Residual Functional Capacity and His Ability to Perform Work at the Light Exertional Level.**

Petitioner argues that the ALJ's finding that he retains the capacity to stand no more than two hours a day is inconsistent with a finding that he is capable of performing work at the light exertional level, because light work generally requires standing for up to six hours a day. *Id.* at 7. This argument is unpersuasive for the reasons set forth below.

The residual functional capacity "determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level (e.g., sedentary, light, or medium)." SSR 83-10. However, "there will be instances where a claimant's residual functional capacity will not fit precisely within one of the exertional categories of work. " *Barstad v. Chater*, 76 F.3d 384, *2 (9th Cir. 1996). Further, there is "Ninth Circuit case law recognizing that is appropriate for a claimant to be found capable of performing a limited range of work in a particular exertional category." *Id.* (citing *Cooper v. Sullivan*, 880 F.2d 1152, 1156-57 (9th Cir. 1989)).

Here, the ALJ found that Petitioner is capable of performing a limited range of light work. (AR 27). Light exertional work is defined as follows:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

*Id.*

**MEMORANDUM DECISION AND ORDER- 7**

Petitioner's only limitation inconsistent with this finding is the Petitioner's limited ability to stand.  The ALJ found that Petitioner is capable of lifting between 15 and 20 pounds.  (AR 27).  In addition, the ALJ noted Petitioner's daily activities, including sitting at the computer, doing household chores, visiting with friends, cooking, driving, and grocery shopping.  (AR 28).  The ALJ found that these daily activities "are consistent with a limited range of light work."  *Id.*

These findings are sufficient to uphold the ALJ's finding that Petitioner is able to perform substantially all of the activities of work at a light exertional level.  He retains sufficient upper body strength and a level of activity consistent with the light exertional level.  Further, the ALJ addressed the standing limitation as well as the necessity for a sit-stand option in the residual functional capacity determination.  (AR 27).  Therefore, the finding that Petitioner is able to perform a limited range of light exertional work will not be disturbed on appeal.

### 2. The Alleged Conflict Between Vocational Testimony and the DOT

At step five in the sequential process, the Commissioner has the burden of demonstrating that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d at 681.  There are two ways for the Commissioner to meet its burden: (1) the testimony of a vocational expert (VE); or (2) by reference to the Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2.  *See Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983).

In determining whether work exists in the national economy, the Social Security Administration takes "administrative notice of reliable job information available from various governmental and other publications," including the DOT, published by the Department of

**MEMORANDUM DECISION AND ORDER- 8**

Labor.  20 C.F.R. § 404.1566; 20 C.F.R. § 416.966.  To address the problems that arise when occupational evidence provided by the vocational expert is in conflict with information in the DOT, the Social Security Administration issued a ruling "to clarify . . . standards for identifying and resolving such conflicts."  *See* SSR 00-4P, *2.[1]

The Social Security Administration relies "primarily on the DOT" and "[o]ccupational evidence provided by a [vocational expert] . . . generally should be consistent with the occupational information supplied by the DOT."  *Id.*  At the same time, conflicts will arise and SSR 00-4p sets standards applicable at the hearing and to written decision when conflicts exist.

First, at the hearing, the ALJ must inquire whether the vocational expert's testimony conflicts with the DOT before relying on such testimony.  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007).  SSR 00-4p expressly provides:

> When there is an apparent unresolved conflict between [vocational expert] . . . evidence and the DOT, the adjudicator must elicit a *reasonable explanation* for the conflict before relying on the [vocational expert] . . .  evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p at *2 (italics added).

The ruling also provides a non-exhaustive list of reasonable explanation for possible conflicts, including "[i]nformation about a particular job's requirements or about occupations not listed in the DOT."  *Id*.  Such information "may be available in other reliable publications" or it

---

[1]   Social Security Ruling 00-4p, *available at* 2000 WL 1898704.  "[Social Security Rulings] reflect the official interpretation of the [Social Security Administration] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Avenetti v. Barnhart,* 456 F.3d 1122, 1124 (9th Cir.2006) (quoting *Ukolov v. Barnhart,* 420 F.3d 1002, 1005 n. 2 (9th Cir.2005)).

**MEMORANDUM DECISION AND ORDER- 9**

may be available "directly from employers, or from a vocational expert's experience in job placement or career counseling." *Id.*

The reason behind the rule is "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.* at *3. In contrast, a vocational expert "may be able to provide more specific information about jobs or occupations than the DOT." *Id.* In addition, "[t]he procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the Dictionary of Occupational Titles." *Massachi v. Astrue*, 486 F.3d at 1153.

In the instant case, the parties do not dispute that the ALJ met his burden at the hearing and solicited a reasonable explanation from the vocational expert to explain a potential conflict between her testimony and the information provided in the DOT. First, the ALJ asked the vocational expert to identify the impact Petitioner' s sitting and standing limitations coupled with the sit-stand option would have on "the wide range of all unskilled, entry level, light occupations found in the Dictionary of Occupational Titles." (AR 288). The vocational expert responded that the sit-stand option would reduce the available jobs by about two-thirds. *Id.* Second, the ALJ then asked the vocational expert to identify two or three examples of light jobs that could be performed jobs with the limitations described above, as well as a hand tremor, and the vocational expert identified employment as a toll taker and information clerk. (AR 288-89). Third, the ALJ noted that the DOT does not discuss or provide for a sit-stand option and asked the vocational expert to clarify the conflict. (AR 289). Specifically, the ALJ asked, "I have asked you for jobs with a sit/stand option, [and] you gave me five of them there . . . [.] [T]he DOT does not discuss

**MEMORANDUM DECISION AND ORDER- 10**

the sit/stand option in the dictionary of Occupational Titles[;] what's the basis for saying these jobs could be done with such an option? The vocational expert responded that she relied upon "[her] experience with conducting labor market surveys and contacting employers to determine job functions of specific jobs." *Id.*

Because the issue has not been raised by the parties, it is not necessary to determine whether this explanation meets the regulatory requirements. Instead, the issue is whether the ALJ appropriately explained in the written decision how the conflict was resolved.

The ALJ also has an affirmative duty to explain in the written decision how the conflict between the vocational expert testimony and DOE was resolved. Social Security Ruling 00-4p provides:

> When vocational evidence provided by a [vocational expert] . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the vocational expert] . . . evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

*Id*. at *4.

Here, the ALJ's written decision states "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (AR 30). However, as acknowledged at the hearing, this is not true. The DOT characterizes the jobs of toll taker and information clerk as light exertion. *Id.* Because light exertion would generally require up to six hours of standing, the ALJ's finding that such jobs are consistent with

**MEMORANDUM DECISION AND ORDER- 11**

Petitioner's residual functional capacity is inconsistent with the DOT. Therefore, according to SSR 00-4pm, the conflict must be resolved in the written decision.

Respondent does not address the requirement of a written explanation or argue that the DOT is not inconsistent with the vocational expert testimony. Instead, the Respondent argues that the vocational expert provided a "reasonable deviation" from the DOT. *Respondent's Memorandum*, p. 6 (Docket No. 19). However, the deviation is actually a conflict with the DOT and, thus, requires a written explanation. By requiring a written explanation, SSR 00-4p helps ensure that the ALJ's decision is, in fact, reasonable and justifiable.

In light of the unambiguous requirements of SSR 00-4p, the testimonial explanation is not sufficient, and the ALJ will be required to provide a written explanation of how he decided to resolve the conflict. Because the ALJ did not provide a written explanation for the conflict between the vocational expert's testimony and the DOT, the decision must be remanded to include that analysis.

## IV.

## CONCLUSION

While there is substantial evidence in the record to support the ALJ's finding that the Petitioner retains the residual functional capacity to perform a limited range of light work, the ALJ's decision is incomplete and thus erroneous, because he did not provide a clear explanation for how he resolved the conflict between the vocational expert's testimony and the DOT. Therefore, in the face of an unambiguous Social Security Ruling and no argument that such a ruling is not consistent with the Social Security Act and regulations, the provisions of SSR 00-4p

**MEMORANDUM DECISION AND ORDER- 12**

must be applied requiring that the case be remanded to the ALJ for a written resolution of the conflict.

V.

**ORDER**

Based on the foregoing, Petitioner's request for review is GRANTED. The Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED: **March 19, 2008**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER- 13**